IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HSM PORTFOLIO LLC and TECHNOLOGY
PROPERTIES LIMITED LLC,

               Plaintiffs;

    v.

ELPIDA MEMORY INC., et al.,

               Defendants.

Civil Action No. 11-770-RGA

### MEMORANDUM ORDER

Before the Court are three "motions to strike" (D.I. 1049, 1091, 1125) and one motion to "preclude untimely evidence from trial" (D.I. 995). The issues have been fully briefed. For the reasons stated below, the motions are **GRANTED IN PART, DENIED IN PART** and **DISMISSED AS MOOT IN PART**.

Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." To determine whether a failure to disclose is harmless, courts in the Third Circuit consider the so-called "*Pennypack*" factors, which include: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). "It bears

emphasis that exclusion of 'critical evidence,' such as an expert report on infringement, is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *Abbot Labs. v. Lupin Ltd.*, 2011 WL 1897322, at \*3 (D. Del. May 19, 2011) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)). The determination of whether to exclude evidence is within the discretion of district court. *See In re Paoli*, 35 F.3d at 749.

In their motions to strike (D.I. 1091, 1125), Plaintiffs move to strike "untimely evidence" cited in Micron's summary judgment briefing. For each issue implicated by this "untimely evidence," the Court has ruled in Plaintiffs' favor on the merits. Therefore, the Court sees no reason to consider these motions and they are hereby **DISMISSED AS MOOT**.

In the other motion filed by Plaintiffs (D.I. 995), Plaintiffs seek to exclude "untimely prior art evidence from trial." One part of this motion addresses the A35A Design ID. As Defendant has withdrawn its reliance on the A35A product design, the part of the motion pertaining to the A35A Design ID is **DISMISSED AS MOOT**.

Another part of the motion relates to the Flannagan and Annaratone prior art references. These references were previously disclosed by Defendant, but only in relation to the '949 patent. (D.I. 995 at 3). Plaintiffs argue these references should be excluded because they were not timely disclosed as references with respect to the '853 patent and the '367 patent. I am not convinced that prejudice would result from permitting the introduction of these references. With respect to the '853 patent, Annaratone is referenced as background material. Since these patents cover similar technology,[1] it is unclear to me how prejudice arises from using, as a background

---

[1] Defendant's invalidity expert, Dr. Walker, explains that because "certain background technology . . . overlaps among the patents-in-suit," "each background of technology section should be considered to also incorporate the background sections of the other asserted patents." (D.I. 1000, Ex. 32 ¶ 57).

reference, a prior art reference which had already been disclosed as prior art for another patent-in-suit. With respect to the '367 patent, Dr. Walker uses Annaratone as a secondary reference for the exact same limitation for which it was used in relation to the '949 patent. Further, with respect to the '367 patent, Plaintiffs' expert has already addressed Annaratone in his report. (D.I. 1000 Ex. 33 ¶ 411). Flannagan is used as a secondary reference for a dependent claim in the '853 patent to show that a "memory cell can be input to a buffer." (D.I. 999 at 19). Plaintiffs's expert addressed Flannagan as prior art to the '853 patent in his report. (D.I. 1000 Ex. 33 ¶¶ 242-44). All of the references used by Defendant were known to Plaintiffs before the service of the invalidity report. These references were used in a manner generally consistent with Defendant's invalidity contentions. To the extent there has been any prejudice at all, it has been substantially mitigated by the fact that Plaintiffs' validity expert was able to address the references in his report. *See Abbott Labs.*, 2011 WL 1897322, at *5. There are no allegations of bad faith or willfulness in the failure to disclose. Additionally, there is no indication that inclusion of these prior art references would disrupt the trial. To the contrary, allowing certain references to be used in relation to multiple patents promotes the efficiency of the trial. The motion is therefore **DENIED** with respect to the Flannagan and Annaratone prior art references.

Plaintiffs also seek to exclude the Mead & Rem reference. This reference is cited in Dr. Walker's invalidity report for the background point that scaling factors were known in the art in the 1980s. It is not used in any obviousness combination or as a primary reference. (D.I. 999 at 20-21). Any claim of prejudice or surprise is undercut by the fact that the manner in which it is used in Dr. Walker's invalidity report is identical to the manner in which it was used by Dr. Walker in his claim construction declaration. (D.I. 1000, Ex. 32 ¶ 17; Ex. 39 ¶¶ 69, 116). Additionally, Plaintiffs' expert has already addressed the reference in his validity report. Thus, I

do not see what prejudice Plaintiffs will experience if the evidence is not excluded.  Further, Plaintiffs have not suggested any bad faith or willfulness in Defendant's failure to timely disclose this reference.  Also, there is no indication that declining to exclude this relatively minor reference would somehow disrupt an orderly and efficient trial.  Therefore, the motion is **DENIED** with respect to the Mead & Rem reference.

Plaintiffs also seek to exclude certain prior art corroboration evidence.  This evidence consists of declarations and letters "to establish dates of public availability for various prior art references." (D.I. 995 at 4).  Plaintiffs contend "[t]here is no excuse" for the delay in production. (*Id.*).  I disagree.  This is a problem of Plaintiffs' own making.  Because Plaintiffs were dilatory in their interrogatory responses pertaining to the prior art, Defendant did not know that Plaintiffs intended to argue that certain references did not qualify as prior art until after Defendant's invalidity report was due.[2]  If Plaintiffs wished to conduct discovery to challenge the date that these prior art references were made public, they could have done so for quite some time, at least since the reduced list of prior art references was submitted by Defendant.  Plaintiffs cannot now claim prejudice and surprise.  If Plaintiffs choose to challenge the dates of public availability at trial, they may do so.  I fail to see how permitting Defendant to rely on its prior art evidence would disturb an orderly and efficient trial.  Additionally, there is no allegation of bad faith or willfulness on the part of Defendant.  The motion is therefore **DENIED** with respect to the prior art corroboration evidence.

---

[2] Defendant served an interrogatory on March 14, 2014, asking Plaintiffs to "identify any basis for contending the prior art does not render an asserted claim invalid." (D.I. 999 at 17; D.I. 1000, Ex. 40).  In response to an order by the Special Master, Defendant disclosed its reduced list of prior art on April 1, 2015.  (D.I. 999 at 21-22).  Plaintiffs did not respond to the interrogatory until June 5, 2015, over a month after Defendant's invalidity report was due.  (*Id.*).

4

In Defendant's motion to strike (D.I. 1049), Defendant seeks to strike "untimely opinions of Plaintiffs' expert witness." Defendant raises three issues pertaining to Dr. Foty's reply infringement report: (1) that in relation to the '949 patent, Dr. Foty accuses a new "sense amplifier" circuit; (2) that in relation to the '212 patent, Dr. Foty introduces a new "capability" infringement argument; and (3) that in relation to the '212 patent, Dr. Foty introduces a new doctrine of equivalents argument. (D.I. 1052 at 5).

The parties agree that the '949 patent covers "sense amplifiers." (D.I. 1052 at 4-5; D.I. 1085 at 7). Defendant contends, however, that in Dr. Foty's initial infringement report, Plaintiffs only "accused Micron's 6T SRAM memory cells of infringing the 949 Patent, and not a 'sense amplifier' that would sense the output from those memory cells." (D.I. 1052 at 4). Defendant then posits that in Dr. Foty's reply infringement report, "Plaintiffs accused an entirely new circuit—a 'sense amplifier.'" (*Id.* at 5). Plaintiffs respond that Dr. Foty "disagree[s] with Dr. Walker regarding what constitutes a sense amplifier" and that Dr. Foty, in his reply report, "point[ed] to a sense amplifier" in the K15L to show that Plaintiffs do accuse sense amplifiers. (D.I. 1085 at 10). Plaintiffs concede, however, that the sense amplifier that Dr. Foty "point[ed] to" and charted was not included in Dr. Foty's opening report or in their invalidity contentions. (*Id.*). The problem for Plaintiffs is that this previously uncharted circuit serves as the basis for the new infringement theory in Dr. Foty's reply report. (D.I. 1054, Ex. E ¶¶ 158-60; Ex. G). This circuit was never disclosed in any of Plaintiffs' contentions or in Dr. Foty's initial report. (D.I. 1054, Ex. A, Ex. B, Ex. C, Ex. F ¶¶ 499-507). Plaintiffs should not be permitted to advance a new infringement theory in their reply report. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); *MobileMedia Ideas, LLC v. Apple Inc.*, 2012 WL 6019305, at *1 (D. Del. Dec. 3, 2012). While it is true that Defendant filed a supplemental non-infringement report that responded to this new infringement

theory, I am not convinced that is sufficient to cure the prejudice. (*See* D.I. 1052 at 12 n.4).
Defendant rightly focused its own theories in response to those raised by Plaintiffs. If Plaintiffs
had timely disclosed this infringement theory, Defendant may have been able to assert different
theories of non-infringement and invalidity. Defendant does not attribute any bad faith or
willfulness to Plaintiffs. Rather, Defendant believes Plaintiffs are merely reacting to Defendant's
non-infringement theory. That is precisely the problem however, as Plaintiffs should not be
permitted to advance new theories in a reply report. While there seems to be little risk that
permitting this theory would disrupt the trial, that by itself does not overcome the prejudice
experienced by Defendant. Therefore, with respect to the new infringement theory for the '949
patent raised in Dr. Foty's reply infringement report, Defendant's motion is **GRANTED**.

Another part of this motion pertains to Dr. Foty's "capability" infringement argument
with respect to the '212 patent. The Court ruled in Defendant's favor on summary judgment of
non-infringement for the '212 patent. That is, the Court held that, as a matter of law, Defendant
does not literally infringe. Therefore, the part of the motion that relates to Dr. Foty's analysis for
literal infringement of the '212 patent is **DISMISSED AS MOOT**.

Lastly, Defendant claims that Dr. Foty "did not set forth in his initial report a Doctrine of
Equivalents theory relating to the 'complementary FET inverter' limitation." (D.I. 1052 at 12).
It is difficult to see how there is any prejudice to Defendant in this instance. In Plaintiffs'
infringement contentions, Plaintiffs stated that the NAND and/or NOR gates contained the
"complimentary FET inverter or its equivalent." (*See, e.g.*, D.I. 1086, Ex. I at 7). The opening
infringement report contains the same statements about equivalents. (*See, e.g.*, D.I. 1086, Ex. D
at 69). Further, Plaintiffs' literal infringement argument is nearly identical to its doctrine of
equivalents argument. Plaintiffs argue that the NAND and NOR gates "will function as an

inverter" under certain circumstances. (*Id.* ¶ 544). Also, Defendant's expert, despite stating that Plaintiffs provided no doctrine of equivalents analysis, opined on a doctrine of equivalents infringement theory in his non-infringement report. (D.I. 1086, Ex. A ¶¶ 650-53). The only new theories advanced by Plaintiffs during rebuttal related to Defendant's arguments precluding the application of the doctrine of equivalents (*i.e.*, claim vitiation) and a recitation of the function-way-result test. (D.I. 1054 ¶ 208). Defendant has failed to show that any prejudice will arise if Plaintiffs are permitted to advance their doctrine of equivalents theory. Additionally, Defendant has not alleged bad faith or willfulness on the part of Plaintiffs, or that permitting Plaintiffs to advance this theory will disrupt an orderly and efficient trial. Therefore, the motion is **DENIED** with respect to the doctrine of equivalents infringement theory for the '212 patent.

Entered this 11 day of February, 2016.

United States District Judge